O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JEFF FEYKO, individually and   ) Case No. CV 11-05511 DDP (PJWx)
on behalf of all others        )
similarly situated,            ) ORDER DENYING IN PART AND
                               ) GRANTING IN PART DEFENDANTS'
            Plaintiff,         ) MOTION TO DISMISS
                               )
     v.                        ) [Docket No. 134]
                               )
YUHE INTERNATIONAL, INC.,      )
GAO ZHENTAO and HU GANG.,      )
                               )
            Defendants.        )
_____)

I. **Background**

Lead Plaintiff aAd Partners LP ("Lead Plaintiff") alleges that it purchased shares of common stock of Yuhe International, Inc. ("Yuhe") during the class period, including in the October 20, 2010 secondary offering of Yuhe shares. (See generally Second Consolidated Amended Complaint ("SCAC").)  Lead Plaintiff alleges that it suffered losses because of false statements that Yuhe and its executives made, including false statements made in the second offering.  (Id.)  Lead Plaintiff has sued various individuals and organizations.  (Id.)  This Court previously dismissed Lead Plaintiff's allegations against Roth Capital Partners, LLC

1 ("Roth");  Brean Murray, Carret & Co., LLC; and Global Hunter

2 Securities, LLC (the "Underwriter Defendants"). (<u>See generally</u>

3 Order Granting in Part and Denying in Part Motions to Dismiss and

4 Strike ("Order"), Docket No. 128.)  Lead Plaintiff has since filed

5 the SCAC.  Presently before the Court is the Underwriter

6 Defendants' Motion to Dismiss Lead Plaintiff's Section 11 claim.

7 ("Motion").  (Docket No. 134.)

8     Yuhe buys chickens, raises them to produce eggs, hatches the

9 eggs and then sells the live day-old chicken (sometimes referred to

10 as broilers).  (SCAC ¶ 18.)  At issue in this case are various

11 allegedly false statements concerning Yuhe's acquisition of

12 thirteen chicken breeder farms in China from the Weifang Dajiang

13 Corporation ("Dajiang"), an acquisition that would have

14 approximately doubled the number of Yuhe's breeder farms.  (<u>Id.</u> ¶¶

15 2, 45-46.)  Lead Plaintiff alleges that the purchase of these farms

16 never occurred.  (<u>Id.</u> ¶ 2.)  The Underwriter Defendants managed

17 Yuhe's October 20, 2010 offering, with Roth serving as the lead

18 underwriter.  (<u>Id.</u> ¶¶ 23-27.)  Lead Plaintiff alleges that the

19 Prospectus Supplement for the October 20, 2010 offering, which was

20 issued as part of the Registration Statement for that offering,

21 falsely stated that Yuhe had acquired chicken breeder farms from

22 Dajiang.  (<u>Id.</u> ¶¶ 140-61.)

23 **II. <u>Legal Standard</u>**

24     A complaint will survive a motion to dismiss when it contains

25 "sufficient factual matter, accepted as true, to state a claim to

26 relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S.

27 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

28 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

"accept as true all allegations of material fact and must construe
those facts in the light most favorable to the plaintiff." <u>Resnick
v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint
need not include "detailed factual allegations," it must offer
"more than an unadorned, the-defendant-unlawfully-harmed-me
accusation." <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or
allegations that are no more than a statement of a legal conclusion
"are not entitled to the assumption of truth." <u>Id.</u> at 679.  In
other words, a pleading that merely offers "labels and
conclusions," a "formulaic recitation of the elements," or "naked
assertions" will not be sufficient to state a claim upon which
relief can be granted. <u>Id.</u> at 678 (citations and internal
quotation marks omitted).

 "When there are well-pleaded factual allegations, a court should
assume their veracity and then determine whether they plausibly
give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs
must allege "plausible grounds to infer" that their claims rise
"above the speculative level." <u>Twombly</u>, 550 U.S. at 555-56.
"Determining whether a complaint states a plausible claim for
relief" is a "context-specific task that requires the reviewing
court to draw on its judicial experience and common sense." <u>Iqbal</u>,
556 U.S. at 679.

**III. <u>Analysis</u>**

 The Underwriter Defendants seek to dismiss the Section 11
claims of subclass members who bought shares traceable to the
October 20, 2011 offering.  "Section 11 of the Securities Act of
1933, 15 U.S.C. § 77(k), provides a cause of action to any person
who buys a security issued under a materially false or misleading

registration statement." <u>In re Century Aluminum Co. Sec. Litig.</u>,
No. 11-15599, 2013 WL 1633094, at *1 (9th Cir. Apr. 17, 2013).  To
have standing to sue under Section 11, plaintiffs must show that
they "have purchased shares in the offering made under the
misleading registration statement," or if they purchased their
shares in the aftermarket, standing will be found "provided they
can trace their shares back to the relevant offering." <u>Id.</u>  The
latter approach is "often impossible," and conclusory allegations
in the complaint that the shares are traceable will not suffice.
<u>Id.</u> at *2-3.  Plaintiffs "must do more than allege facts that are
merely consistent with both their explanation and defendants'
competing explanation." <u>Id.</u> at *4.  They must "allege[] facts
which, accepted as true, tend[] to exclude the possibility that the
defendant['s]" competing explanation is correct.  <u>Id.</u>

        The Court previously dismissed Subclass members whose shares
were only traceable to the October 20, 2010 offering: "[S]ince
Plaintiff seeks to represent members of the Subclass who purchased
Yuhe stock that is traceable to the secondary offering, and since
Lead Plaintiff does not provide any detailed analysis as to how
these Subclass members' shares can be traced to the relevant
offering, the Court dismisses the Section 11 claims of these
subclass members."  Order at 14:4-9.

        Lead Plaintiff amended the definition of the Subclass to "all
persons and entities who purchased or otherwise acquired newly
issued Yuhe shares at the Offering price of $7.00 per share
pursuant to and traceable (for purposes of the Section 11 claim) to
a secondary offering Yuhe made on or about October 20, 2010 and who

were damaged thereby." (SCAC ¶ 36.)[1]  Lead Plaintiff also alleges that Yuhe sold all of the shares issued pursuant to the October 20, 2010 offering on November 2, 2010. (Id. ¶¶ 61-62.)  The Court takes judicial notice that from October 19, 2010, the day before the relevant offering, through March 22, 2011, Yuhe's shares were not traded in the open market at an amount equal to or less than $7.00.[2] (Plaintiff's Request for Judicial Notice ("PRJN" EX. E)); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (holding that "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. But a court may not take judicial notice of a fact that is subject to reasonable dispute") (internal quotation marks and citations omitted).[3]  That shares in the second offering were sold at $7.00, and that in the open market Yuhe shares were traded at over that amount through March 22, 2011, "tend[s] to exclude the possibility" that the Subclass members who bought Yuhe stock at a price of $7.00 per share prior to March 23, 2011 bought stock that was not traceable to the October 20, 2010 offering.  See In re Century Aluminum Co. Sec. Litig., No. 11-15599, 2013 WL 1633094, at *4.  Therefore Subclass members who bought Yuhe stock

---

[1]While this definition suffices at the motion to dismiss stage, more than the price of purchased shares will have to be shown to ultimately prove tracing at trial.  In order to show that shares purchased at $7 are directly traceable to a sale from Yuhe or its agent, Lead Plaintiff will have to follow the shares' chain of possession and eventually show that they match a sale or sales from Yuhe or its agent in the secondary offering.

[2]Yuhe used to be listed on Nasdaq.  (SCAC ¶ 18.)

[3]The Underwriter Defendants have not disputed the accuracy of Yuhe's stock price, nor have they objected to the Court taking judicial notice of them.

at $7.00 per share from October 20, 2010 to March 22, 2011 have standing.

However, Subclass members who purchased Yuhe stock on or after March 23, 2011 do not have standing, because Lead Plaintiff has not alleged sufficient facts that these members' shares are traceable. Indeed, Lead Plaintiff seemed to acknowledge as much in its opposition brief: "Therefore, it is plausible that a subclass member, such as Lead Plaintiff, who purchased shares at a price of $7.00 on or after October 20, 2010 until the date thereafter when the stock price traded at or below $7.00, purchased shares traceable to the Offering."  Docket No. 135 at 22:13-17.

The Underwriter Defendants also state that a due diligence affirmative defense is established on the face of the SCAC, because it alleges that they reasonably relied on CVB, Yuhe's auditor, in preparing the Registration Statement for the secondary offering and documents that were part of that statement.  See McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990) (holding that an affirmative defense "must appear on the face of the pleading" for a complaint to be dismissed).  Section 11 requires a plaintiff to prove "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment."  Rubke, 551 F.3d at 1161 (internal quotation marks and citation omitted).  Section 11 generally holds "the issuer of the securities . . . absolutely liable."  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 208 (1976).  However, experts "who have prepared portions of the registration statement are accorded a 'due

1    diligence' defense.  In effect, this is a negligence standard."

2    <u>Id.</u>  The expert must prove it acted with due diligence.  <u>Id.</u>

3       "An underwriter need not conduct due diligence into the

4    'expertised' parts of a prospectus, such as certified financial

5    statements."  <u>In re Software Toolworks Inc.</u>, 50 F.3d 615, 623 (9th

6    Cir. 1994).  An underwriter "need only show that it 'had no

7    reasonable ground to believe, and did not believe ... that the

8    statements therein were untrue or that there was an omission to

9    state a material fact required to be stated therein or necessary to

10    make the statements therein not misleading.'"  <u>Id.</u>  Courts look to

11    plaintiffs to point to red flags that should have indicated to the

12    underwriter that the financial statements were untrustworthy.  <u>See</u>

13    <u>id.</u> at 623-24.  In <u>In re Countrywide</u>, a district court allowed an

14    underwriter to establish the due diligence defense at the motion to

15    dismiss stage, because "underwriters may reasonably rely on

16    auditors' statements, absent red flags that the underwriters were

17    in a position to see."  588 F.Supp. 2d at 1175.  This Court

18    previously dismissed Lead Plaintiff's Section 11 claim because it

19    pointed to no red flags that should have cautioned the Underwriter

20    Defendants against relying on CVB, Yuhe's auditor.  (Order at 19:7-

21    20:2.)

22       Lead Plaintiff has stated a sufficient Section 11 claim

23    against the Underwriter Defendants.  The SCAC alleges:  "The

24    Offering also states that 20 breeder farms are in operation,

25    including five of the Dajiang farms."  (SCAC ¶ 98.)  The SCAC

26    alleges that Yuhe never acquired the Dajiang farms.  (<u>Id.</u> ¶¶ 2,

27    98.)  At the time of the October 20, 2010 offering, CVB had not

28    represented that the five Dajiang farms were operational.  The

1 first representation that these five farms were operational

2 occurred in Yuhe's July 19, 2010 Form 8-K,[4] which was incorporated

3 by reference into the October 20, 2010 Prospectus Supplement and

4 which was filed more than three months after CVB's audit report was

5 made public. (Id. ¶ 97.) The Prospectus Supplement was "issued to

6 and as part of the Registration Statement." (Id. ¶ 141.)

7     The Underwriter Defendants dispute the significance of the

8 representation about the five Dajiang farms being operational by

9 referencing several filings that CVB audited, which indicate that

10 the Dajiang farms would become operational in 2010. (Docket No.

11 137 at 9:16-10:7.) But the Underwriter Defendants were only

12 entitled to "reasonably rely on auditors' statements, absent red

13 flags," not assume that Yuhe's predictive statements had, in fact,

14 come to fruition. See In re Countrywide 588 F.Supp.2d at 1175. As

15 this Court has previously ruled, the Underwriter Defendants were

16 allowed to rely on the expertised portions of CVB's audit report.

17 But the Underwriter Defendants were not permitted to, as the SCAC

18 alleges, elevate the audited expectancies into an accomplished

19 fact. In other words, an expectation that the farms to would

20 become operational is one thing, stating they are operational

21 indicates something more-it indicates that the Dajiang transaction

22 is being successfully.

23     Thus, on the face of the SCAC, the Underwriter Defendants

24 relied on Yuhe's statements that five of the Dajiang farms, a

25 quarter of Yuhe's operational farms, were operational.

26

27     [4]The July 19, 2010 Form 8-K was incorporated by reference into

28 the October 20, 2010 Prospectus Supplement. (Id. ¶ 97; PRJN Ex. B at 66.)

1   Accordingly, and because due diligence should generally be reserved

2   for a jury to determine, Lead Plaintiff has alleged sufficient

3   facts for a Section 11 claim.   See In re Software Toolworks Inc.,

4   50 F.3d 615, 621, 626 (9th Cir. 1994) ("For its due diligence

5   investigation of these sales, however, the Underwriters did little

6   more than rely on Toolworks' assurances that the transactions were

7   legitimate.   A reasonable inference from this evidence is that

8   Toolworks fabricated the June sales to ensure that the offering

9   would proceed and that the Underwriters knew, or should have known,

10  of this fraud."); Leasco Data Processing Equip. Corp., 332 F.Supp.

11  544, 582 (E.D.N.Y.1971) ("Tacit reliance on management is

12  unacceptable; the underwriters must play devil's advocate."); see

13  also Chris-Craft Indus., Inc. v. Piper Aircraft Corp., 480 F.2d

14  341, 370 (2d Cir. 1973) ("Prospective investors look to the

15  underwriter-a fact well known to all concerned and especially to

16  the underwriter-to pass on the soundness of the security and the

17  correctness of the registration statement and prospectus.").

18  **IV. Conclusion**

19      For the reasons stated herein, the Underwriter Defendants'

20  Motion is DENIED, except that the Court dismisses with prejudice

21  Lead Plaintiff's Section 11 claim on behalf of Subclass members who

22  bought Yuhe stock on or after March 23, 2011.   However, the only

23  Section 11 allegations against the Underwriter Defendants that

24  survive are those related to the Prospectus Supplement's statement

25  that five of the Dajiang farms were operational.   The remaining

26  ///

27  ///

28

1    Section 11 allegations against the Underwriter Defendants are

2    dismissed with prejudice.

3
     IT IS SO ORDERED.
4

5

6
     Dated: July 10, 2013
7                                            DEAN D. PREGERSON
                                             United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28